1  Joseph W. Cotchett (#36324)
   jcotchett@cpmlegal.com
2  Steven N. Williams (#175489)
   swilliams@cpmlegal.com
3  Nancy L. Fineman (#124870)
   nfineman@cpmlegal.com
4  **COTCHETT, PITRE & McCARTHY**
   San Francisco Airport Office Center
5  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
6  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
7

8  *Attorneys for Plaintiff and the Proposed Class*

9

10
                    **UNITED STATES DISTRICT COURT**
11
                 **NORTHERN DISTRICT OF CALIFORNIA**
12

13  CALIF-COAST INVESTIGATIVE SERVICES,          Case No.
    itself and others similarly situated,
14
                               Plaintiff,         **CLASS ACTION COMPLAINT**
15       vs.

16  LEXAR MEDIA, INC.;                            **DEMAND FOR JURY TRIAL**
    HITACHI AMERICA, LTD.;
17  HITACHI, LTD.;
    HITACHI ELECTRONIC DEVICES USA;
18  HYNIX SEMICONDUCTOR AMERICA, INC.;
    HYNIX SEMICONDUCTOR, INC.;
19  MICRON TECHNOLOGY, INC.;
    MICRON SEMICONDUCTOR PRODUCTS, INC.;
20  RENESAS TECHNOLOGY CORPORATION;
    RENESAS TECHNOLOGY AMERICA, INC.;
21  SAMSUNG SEMICONDUCTOR, INC.;
    SAMSUNG ELECTRONICS COMPANY, LTD.;
22  TOSHIBA CORPORATION;
    TOSHIBA AMERICA, INC.; and
23  TOSHIBA AMERICA ELECTRONIC
    COMPONENTS, INC.,
24
                               Defendants.
25

26

27

28

⊗
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**CLASS ACTION COMPLAINT**

# **TABLE OF CONTENTS**

**PAGE NO.**

I. NATURE OF THE ACTION ........................................... 1

II. JURISDICTION AND VENUE ........................................ 2

III. PARTIES ........................................................ 2

    A. Plaintiff ...................................................... 2

    B. Defendants .................................................... 3

IV. AGENTS AND CO-CONSPIRATORS ................................. 5

V. CLASS ACTION ALLEGATIONS ..................................... 6

VI. COMMERCE ...................................................... 9

V. PRODUCT AND TRADE ............................................ 9

VII. FACTUAL ALLEGATIONS .......................................... 10

    A. Background Of Chips ........................................... 10

    B. Stand-Alone Product ........................................... 13

    C. Applications .................................................. 13

    D. Different Types of Flash Memory ................................ 14

    E. Defendants Access To Exchange Pricing .......................... 17

    F. Information Exchange On The Internet ............................ 20

    G. Pricing Trend In Flash Memory Industry .......................... 20

    H. DOJ Investigation ............................................. 21

VIII. ACTIVE CONCEALMENT OF CONSPIRACY ........................ 22

IX. VIOLATIONS ALLEGED ............................................ 23

First Claim (Violation of Section 1 of the Sherman Act) ................... 23

Second Claim (Violation of the California Cartwright Act) ................ 24

Third Claim (Violation of the California Unfair Competition Law) .......... 26

Fourth Claim (Violation of State Antitrust and Unfair Competition Law) ..... 28

Fifth Claim (Violation of State Consumer Protection and Unfair Competition Laws) ....................................................... 29

Sixth Claim (Unjust Enrichment and Disgorgement of Profits) .............. 30

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1

X.     PRAYER FOR RELIEF .............................................. 30

XI.    DEMAND FOR JURY TRIAL ...................................... 32

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**CLASS ACTION COMPLAINT**               ii

1    Plaintiff alleges as follows upon information and belief based, *inter alia*, upon
2  investigation conducted by Plaintiff and his counsel except as to those allegations
3  pertaining to Plaintiff personally, which are alleged upon knowledge.

4  **I.    NATURE OF THE ACTION**

5    1.    Plaintiff brings this lawsuit as a class action on behalf of individuals and
6  entities who purchased Flash Memory INDIRECTLY from Defendants, their subsidiaries,
7  agents, or co-conspirators during the period from at least January 1, 1999 through October
8  2005 (hereinafter the "Class Period").

9    2.    As used herein, the term "Flash Memory" means all types of Flash Memory
10  sold during the Class Period, including AND, Not AND ("NAND"), and Not OR
11  ("NOR") technologies. For purposes of this complaint, Flash Memory excludes all types
12  of static random access memory ("SRAM") or dynamic random access memory
13  ("DRAM") sold during the Class Period.

14    3.    Flash Memory is non-volatile computer memory that can be electronically
15  erased and reprogrammed. It is a technology that is primarily used in memory cards, but
16  also found in digital audio players, digital cameras, mobile phones and video game
17  consoles. Flash Memory is the most popular and costs far less than competing forms of
18  memory and has therefore become the dominant technology wherever a significant
19  amount of non-volatile, solid-state storage is needed. It is a stand alone product as
20  explained in the following paragraphs.

21    4.    During the Class Period, Defendants' collusive behavior inflated the price
22  of Flash Memory. Defendants participated in cartel like behavior to fix the prices of these
23  products. Because of Defendants' unlawful conduct and conspiracy, Plaintiff and other
24  members of the Class paid artificially inflated prices for Flash Memory. Plaintiff and
25  other members of the Class who purchased these products have been damaged by
26  Defendants' illegal actions.

27  ///

28  ///

⊕
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**CLASS ACTION COMPLAINT**                    1

## II. JURISDICTION AND VENUE

5. This complaint is filed pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, seeking injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. In addition, plaintiff and the class seek damages for violations of state antitrust and consumer protection laws. Plaintiff and the class also seek to recover the costs of suit, including reasonable attorneys' fees, for the injuries suffered as a result of the Defendants' violations of those laws.

6. This Court's jurisdiction is based on 28 U.S.C. §§ 1331 and 1337. The Court also has jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy. The Court also has jurisdiction over the state law claims under 28 U.S.C. § 1332 because the amount in controversy for the Class exceeds $5,000,000 and there are members of the Class who are citizens of a different state than the defendants.

7. Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because defendants reside, transact business, or are found within this District, and a substantial part of the events giving rise to the claims arose in the District.

8. The activities of the Defendants and their co-conspirators, as described herein, were within the flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce of the United States.

## III. PARTIES

### A. Plaintiff

9. **CALIF-COAST INVESTIGATIVE SERVICES**, is a business which takes photos for surveillance and investigations, personal property inventory in family law matters and other cases in which photo images are necessary. The Company purchased Flash Memory indirectly from one or more of the Defendants during the Class Period and was injured as a result of the Defendant's illegal conduct. CALIF-COAST INVESTIGATIVE SERVICES is a proprietorship of John Bohannan.

**B.   Defendants**

10.   Defendant **LEXAR MEDIA, INC.** is a Delaware corporation with its principal place of business at 47300 Bayside Parkway, Fremont, California, 94538. During the Class Period, Lexar Media, Inc. sold and distributed Flash Memory to customers throughout the United States. Lexar Media was bought by Micron Technology, Inc. Lexar Media, Inc., Micron Technology, Inc., and Micron Semiconductor Products, Inc. are referred to collectively herein as "Micron."

11.   Defendant **HYNIX SEMICONDUCTOR AMERICA, INC.** is a wholly owned and controlled subsidiary of Defendant Hynix Semiconductor, Inc. with its principal place of business at 3101 North First Street, San Jose, California, 95134. Hynix Semiconductor America, Inc. is a California corporation. During the Class Period, Hynix Semiconductor America, Inc. sold and distributed Flash Memory to customers throughout the United States. Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc. are referred to collectively herein as "Hynix."

12.   Defendant **HYNIX SEMICONDUCTOR, INC.** is a business entity organized under the laws of South Korea, with its principal place of business at SAN 136-1, Ami-Ri Bubal-eub, Icheon-si, Kyoungki-do, Korea, 467-701. During the Class Period, Hynix Semiconductor, Inc. manufactured, sold and distributed Flash Memory to customers throughout the United States.

13.   Defendant **MICRON TECHNOLOGY, INC.** is a Delaware Corporation with its principal place of business at 8000 South Federal Way, Boise, Idaho, 83716. During the Class Period, Micron Technology, Inc. manufactured, sold and distributed Flash Memory throughout the United States.

14.   Defendant **MICRON SEMICONDUCTOR PRODUCTS, INC.** is a corporation formed under the laws of Delaware. Micron Semiconductor Products, Inc. is a wholly owned and controlled subsidiary of Defendant Micron Technology, Inc. with its principal place of business at 8000 South Federal Way, Boise, Idaho, 83716. During the

1 Class Period, Micron Semiconductor Products, Inc. sold and distributed Flash Memory to
2 customers throughout the United States.

3      15.    Defendant **RENESAS TECHNOLOGY CORPORATION** is a business
4 entity organized under the laws of Japan with its principal place of business at
5 Marunouchi Building, 4-1, Marunouchi 2-chrome, Chiyoda-ku, Tokyo, 100-6334, Japan.
6 Renesas Technology Corporation was established on or about April 1, 2003 as a joint
7 venture of Hitachi and Mitsubishi. During the Class Period, Renesas Technology
8 Corporation sold and distributed Flash Memory to customers throughout the United
9 States.

10      16.    Defendant **RENESAS TECHNOLOGY AMERICA, INC.** is a Delaware
11 corporation and is a wholly owned and controlled subsidiary of Renesas Technology
12 Corporation with its principal place of business at 450 Holger Way, San Jose, California,
13 95134-1368. During the Class Period, Renesas Technology America, Inc. sold and
14 distributed Flash Memory to customers throughout the United States. Defendants
15 Renesas Technology Corporation and Renesas Technology America, Inc. are referred to
16 collectively herein as "Renesas."

17      17.    Defendant **SAMSUNG SEMICONDUCTOR, INC.** is a California
18 corporation and is a wholly owned and controlled subsidiary of Samsung Electronics Co.
19 Ltd. with its principal place of business at 3655 North First Street, San Jose, California,
20 95134. During the Class Period, Samsung Semiconductor, Inc. sold and distributed Flash
21 Memory to customers throughout the United States.

22      18.    Defendant **SAMSUNG ELECTRONICS COMPANY, LTD.** is a business
23 entity organized under the laws of South Korea, with its principal place of business at
24 Samsung Main Building, 250-2 ga, Taepyung-ro, Chung-gu, Seoul, Korea. During the
25 Class Period, Samsung Electronics Company, Ltd. sold and distributed Flash Memory to
26 customers throughout the United States. Samsung Electronics Company, Ltd. and
27 Samsung Semiconductor, Inc. are referred to collectively herein as "Samsung."

28

**CLASS ACTION COMPLAINT**     4

19. Defendant **TOSHIBA CORPORATION** is a business entity organized under the laws of Japan, with its principal place of business at 1-1 Shibaura, 1-chrome Minato-ku, Tokyo, 105-8001, Japan. During the Class Period, Toshiba Corporation sold and distributed Flash Memory to customers throughout the United States.

20. Defendant **TOSHIBA AMERICA CORPORATION** is a Delaware corporation and is a wholly owned and controlled subsidiary of Toshiba Corporation with its principal place of business at 1251 Avenue of the Americas, Suite 4110, New York, New York, 10020. During the Class Period, Toshiba America Corporation manufactured, sold and distributed Flash Memory to customers throughout the United States.

21. Defendant **TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC.** is a California corporation and is a wholly owned and controlled subsidiary of Toshiba Corporation with its principal place of business located at 19900 MacArthur Boulevard, Suite 400, Irvine, California, 92612. During the Class Period, Toshiba America Electronic Components, Inc. sold and distributed Flash Memory to customers throughout the United States. Toshiba Corporation, Toshiba America Corporation, and Toshiba America Electronic Components, Inc. are referred to collectively herein as "Toshiba."

## IV. AGENTS AND CO-CONSPIRATORS

22. At all relevant times, each Defendant was and is the agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency. Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants.

23. Defendants, along with certain other corporations, entities, and persons are co-conspirators in the violations and cartel behavior alleged in this Complaint. These co-conspirators have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged herein.

///

///

24. Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions that are the subject of this complaint.

25. Defendants, and each of them, have participated as members of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this Complaint, and have performed acts and made statements in furtherance of the violations and conspiracy.

## A. Unnamed Participants

26. Numerous individuals and entities participated actively during the course of and in furtherance of the price-fixing scheme herein alleged. There was a conspiracy and many acts were done in the course of and in furtherance of the conspiracy by statements, conduct, and intent to defraud. The individuals and entities acted in concert by joint ventures and by acting as agents for principals, in order to advance the objectives of the conspiracy. The acts were intended to promote the conspiratorial objectives.

## V. CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action itself and on behalf of following Class in accordance with Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3):

> All persons and entities currently residing in the United States who, from January 1, 1999 through October 2005, purchased Flash Memory in the United States. Excluded from this Class are the Defendants; their parents, predecessors, successors, subsidiaries, units, divisions, employees, officers, directors; co-conspirators; government entities; and any and all judges and justices (and members of their immediate families) assigned to hear any aspect of this case.

28. This action is appropriate for class treatment under Federal Rule of Civil Procedure 23 because:

a. The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

b. Plaintiffs is informed and believes, and thus alleges, that there are hundreds of thousands, if not over a million, class members. As a result, joinder of all Class members is not practicable;

c. Plaintiff's claims are typical of the Class members' claims. Plaintiff purchased Flash Memory in the United States, and therefore Plaintiff's claims arise from the same conduct giving rise to the Class members' claims. Similarly, the relief sought is common to the Class;

d. The following are common questions of law and fact among Plaintiff and the Class:

   i. Defendants formed and operated a combination or conspiracy to fix or maintain the prices of Flash Memory;

   ii. What acts Defendants and their co-conspirators committed in furtherance of the conspiracy;

   iii. The effect of Defendants' and their co-conspirators' acts on the prices charged for Flash Memory;

   iv. The impact on Plaintiff and the members of the Class as a result of Defendants' and their co-conspirators' conduct;

   v. the measure of damages suffered by the Class;

   vi. How long Defendants' and their co-conspirators' conspiracy lasted, and how long its effects were felt;

   vii. the identities of the co-conspirators;

   viii. whether an injunction is necessary to cause Defendants not to engage in illegal acts;

   ix. whether Defendants' conduct constitutes a violation of Section 1 of the Sherman Act, 15 U.S.C. §1;

   x. whether Defendants' conduct constitutes a violation of California Business and Professions Code sections 16720 and 17200;

xi.    whether Defendants' conduct constitutes a violation of the
       antitrust, unfair competition, and common laws of the states
       as alleged in the Fourth Claim for Relief below; and

xii.   whether Defendants engaged in concealment of their
       conspiracy from Plaintiffs and other Class members;

e.    These questions of law and fact are common to the members of the
      Class and therefore predominate over any questions affecting only
      individual members of the Class;

f.    Plaintiff will fairly and adequately protect the interests of the Class
      and Plaintiff has no interests that are antagonistic to other members
      of the Class;

g.    Plaintiff has retained counsel competent and experienced in the
      prosecution of antitrust litigation and class actions to represent
      himself and the Class;

h.    A class action is superior to other available methods for the fair and
      efficient adjudication of this dispute. Individual joinder of all
      damaged Class members is impractical. Further, because the
      damages suffered by individual Class members are relatively small it
      would not be feasible for Class members to vindicate their claims
      unless Rule 23's class action procedures are applied. Individual
      litigation of these claims would be costly and could create the risk of
      inconsistent or contradictory judgements and will also greatly
      magnify the delay and expense to all parties and to the judicial
      system. The use of the class action procedure presents many less
      case management difficulties. A single adjudication, economies of
      scale, and the supervision by a single court are salutary goals which
      may be achieved through use of the class mechanism;

**CLASS ACTION COMPLAINT**                                    8

i. Unless the class procedure is used, Defendants will be unjustly enriched because they will be able to retain the benefits of their wrongful conduct; and

j. the claims in this case are also properly certifiable under the laws of the State of California, and of the other individual states identified below.

## VI. COMMERCE

29. Throughout the Class Period, Defendants and their co-conspirators engaged in the business of marketing and selling Flash Memory throughout the United States. During the Class Period of January 1999 through October 2005, total sales of Flash Memory were in the billions of dollars.

30. The market for the manufacture and sale of Flash Memory is conducive to the type of collusive activity alleged here.

31. The Flash Memory market is oligopolistic in nature. Samsung is the clear market leader followed by Toshiba, Hynix, Renesas, and Micron. According to the iSuppli website, the leading Flash Memory manufacturers in 2005 were as follows:

| | |
|---|---|
| Samsung: | 52.9% |
| Toshiba: | 21.9% |
| Hynix: | 12.7% |
| Renesas: | 6.8% |
| Micron: | 2.2% |

32. These five entities control over 96.5% of the Flash market.

33. The market for Flash Memory is large, with worldwide revenues in excess of $12 billion in 2006, and growing.

## V. PRODUCT AND TRADE

34. The market for the manufacture and sale of Flash Memory is subject to high manufacturing and technological barriers to entry. Efficient fabrication plants are large and costly. Flash Memory is also subject to technological advances, so that firms within the industry must undertake significant research and development expenses.

35. Further, Flash Memory is a homogeneous product sold by Defendants and purchased by Plaintiff and members of the Class primarily on the basis of price.

36. Manufacturers of electronic products and devices, and resellers of Flash Memory components purchase Flash Memory directly or indirectly from the Defendants. These electronic products and devices and Flash Memory components are then sold, directly or indirectly, to consumers.

37. Defendants sell Flash Memory through various channels, including to manufacturers of electronic products and devices, and to resellers of products containing Flash Memory. These electronic products and devices are then sold to consumers, directly or indirectly, and are not altered during the course of sale.

38. California is the largest market in the world for Flash Memory and is the world wide center of the high technology industry and other industries that depend upon Flash Memory. Statements concerning the prices and market conditions for Flash Memory were disseminated by Defendants from and into California on a regular and continuous basis.

## VII. FACTUAL ALLEGATIONS

### A. Background Of Chips

39. Flash Memory is a type of electronic memory chip with a read-only memory that retains its data when the power is turned off and that can be electronically erased and reprogrammed without being removed from the circuit board. Flash Memory is non-volatile meaning that it does not need continuous power to maintain the information stored for the chip. Flash Memory is produced in the form of an integrated chip which is used in a variety of applications, including memory cards, digital audio players, digital cameras, mobile phones, video game consoles, USB storage devices, fax machines and personal computers. Some examples of Flash Memory are

        a.    a computer's BIOS chip,

        b.    CompactFlash (most often found in digital cameras),

        c.    SmartMedia (most often found in digital cameras),

CLASS ACTION COMPLAINT        10

1       d.      Memory Stick (most often found in digital cameras),

2       e.      PCMCIA Type I and Type II memory cards ,

3       f.      memory cards for video game consoles,

4       g.      iPod and Shuffle music players use NAND Flash Memory chips to

5               store songs,

6       h.      iPhone also uses Flash Memory.

7

8                      **Plaintiff's LEXAR MEDIA CompactFlash**

9

10

11

12         

13

14

15

16

17

18

19

20         

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY




**Examples of USB Storage Devices**




**Example of SmartMedia**



LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1

## B. Stand-Alone Product

2     40.     Flash memory is a stand-alone product. It is not subsumed within, or a part,
3   of another product. When a consumer purchases Flash memory, they typically do so by
4   buying the product itself – not another product of which Flash memory is a component.
5   For that reason, determination of the amount by which plaintiff and the class suffered
6   antitrust damages is not complicated by the need to determine the extent to which
7   defendants' price-fixing conduct inflated the price of various components – one need only
8   examine the extent to which Flash memory prices were inflated.

9

## C. Applications

10     41.     Non-Volatile memory is computer memory that can retain the stored
11   information even when not powered. Examples include read only memory, Flash
12   Memory, hard disks, floppy disk drives, magnetic tape and optical drives. Non-Volatile
13   Memory is usually used for the task of secondary storage or long-term persistent storage.
14   The most widely used primary storage is a volatile form of RAM, meaning when the
15   computer is shut down, anything contained in RAM is lost.

16     42.     Flash has been around for ages. Flash has long been used to make thumb-
17   size USB drives popular for transferring data between home and office. What's new in
18   Flash is that it is just now becoming cheap enough that flash chips can be used as the
19   innards of solid-state drives to replace traditional disk drives, which provide long-term
20   storage on your computer. This new breed of solid-state drives have the same housings
21   and connections as hard-disk drives. Your computer will not know the difference, except
22   the solid-state drive will be lighter, quieter, more energy efficient and, absent moving
23   parts, more reliable.

24     43.     Unlike hard-disk drives, Flash Memory handles data all electronically
25   without the use of motors. A traditional disk drive takes time to spin around and position
26   itself so that the needed data are underneath the drive "head" that does the reading and
27   writing. There is no such delay with flash, because it's all nonmoving, solid-state
28   electronics. The minute or so needed to boot up from a hard drive can thus be cut up to

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

CLASS ACTION COMPLAINT     13

1 half if Flash Memory is used instead. Flash Memory PCs are also lighter. Samsung
2 Electronics Co. has developed a Flash Memory storage device that comes in at 15 grams,
3 25% the weight of a hard drive.

4    44.    Because of the minuscule size of Flash Memory, manufacturers are able to
5 develop smaller and lighter products. An example would be Motorola's RAZR mobile
6 phone, which is the thinnest cell phone available.

### D. Different Types of Flash Memory

8    45.    Currently, NOR and NAND are the two main types of nonvolatile memory
9 chips used in electronic devices to retain data when power is switched off. NOR chips
10 excel at reading data at high speed, making them suitable for running software in
11 cellphones, while NAND chips - widely used in digital cameras and music players - write
12 data at high speed and generally have greater storage capacity. "NAND Flash has wider
13 application and greater market potential than NOR," acknowledged Toshiba
14 spokeswoman Hiroko Mochida. "As more mobile phones require larger capacity to store
15 large-sized music and video files, NAND Flash Memory, which is (better) for larger-
16 storage, will take over the NOR Flash market," said Shin Young-jun, an official at
17 Samsung Electronics.

18    46.    NOR and NAND are Flash Memory chips constructed of either NOR or
19 NAND logic gates. Electronic logic gates are a collection of transistors and resistors that
20 perform a logical operation on one or more logic inputs and produce a single logic output.
21 The logic normally performed is boolean logic and is commonly found in digital circuits.
22 Transistors make up logic gates. Logic gates make up circuits. Circuits make up
23 electronic systems. NOR chips function like a computer's main memory, while NAND
24 works like a hard disk. An example would be, in a digital camera, NOR Flash Memory
25 contains the camera's internal software, while NAND Flash Memory is used to store the
26 pictures.

27    47.    A logic gate is an elementary building block of a digital circuit. There are
28 seven logic gates: NAND, NOR, AND, OR, NOT, XOR, and XNOR. Most logic gates

1  have two input terminals and one output terminal. Every terminal is in one of two binary
2  conditions that is represented by different voltage.

3        48.     NOR Flash Memory was developed by Intel in 1988. NOR Flash Memory
4  supports one-byte random access and "execute in place" (XIP), which means machine
5  instructions can be obtained and executed directly from Flash Memory without going into
6  main memory (DRAM) first as is required with NAND Flash Memory. NOR Flash
7  Memory has a lifespan of about 100K write cycles. As with all Flash Memory, the cells
8  must be erased in large blocks before being written. Erasing a block of typically 16KB
9  takes several seconds, but reading and writing one byte at a time is very fast. NAND
10 Flash Memory was developed by Toshiba a year after Intel's NOR Flash Memory.
11 NAND Flash Memory functions like a disk rather than memory. Flash Translation Layer
12 software makes flash look like a disk drive to the operating system. "Reads and writes"
13 are sector-sized blocks of 512 bytes; however, typically, a 2KB page of four blocks are
14 read and written at the same time. Before writing, cells are erased in blocks ranging from
15 16KB to 128KB. Less expensive than NOR, NAND Flash Memory can be rewritten up
16 to a million times, and erasing and writing NAND is faster than NOR.

17       49.     AND is another stand alone NAND-like chip. Hitachi and Mitsubishi
18 manufactured, sold, and distributed AND. Renesas, a product of the merger between
19 Hitachi and Mitsubishi, also produces AND and AG-AND chips.

20       50.     Micron Technology and Intel Corporation are sampling industry-leading
21 50nm multi-level cell (MLC) NAND Flash Memory manufactured by their NAND Flash
22 Memory joint venture, IM Flash Technologies. The new MLC NAND Flash Memory
23 components feature a world-class die and cell size ideally suited for use in today's
24 computing and consumer electronics devices that are increasingly smaller and more
25 efficient themselves. The 50nm MLC technology, sampling at a 16GB die density,
26 complements the previously announced 50nm single-level cell (SLC) products that the
27 companies are shipping today at a 4GB die density. The new MLC NAND product caps a
28 year of productive activity in which Intel and Micron aggressively ramped a state-of-the-

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**CLASS ACTION COMPLAINT**                    15

1 art 300mm Flash manufacturing factory network and are in the midst of developing sub-
2 40nm NAND Flash Memory products.

3    51.    The most current and fastest Flash Memory was unveiled in May 2007. The
4 Hyperlink NAND (HLNAND(TM)) Flash. A breakthrough Flash Memory architecture
5 and interface that will dramatically improve the performance of computer products that
6 use Flash Memory, including solid state drives (SSD's), Flash Memory cards and USB
7 Flash drives. As the first new Flash Memory architecture and device interface in 15
8 years, HLNAND Flash is a high-performance solution that combines MOSAID's own
9 HyperLink memory technology with industry standard NAND Flash cell technology to
10 deliver the industry's most advanced feature set, reaching sustained I/O bandwidths more
11 than ten times higher than conventional Flash. HLNAND Flash delivers sustained read
12 and write bandwidth up to 800MB/s using existing NAND Flash cell technology.
13 HLNAND Flash offers a highly expandable memory subsystem, supporting up to 255
14 devices on a single interface. The improved write scheme provides significant
15 improvements to program and erase endurance and also enables lower voltage operation
16 to yield lower power consumption in portable applications.

17    52.    Toshiba America Electronic Components, Inc. commercialized a new
18 embedded NAND Flash Memory series, which complies with the eMMC(TM) standard
19 and achieves the industry's largest capacity. The new 16 gigabyte (GB) devices are
20 designed for application in mobile consumer products, such as mobile phones and video
21 cameras.

22    53.    The new 16GB chip combines eight 2GB NAND chips fabricated with
23 Toshiba's cutting-edge 56nm process technology, along with a controller chip, in a
24 standard small size package. The new embedded memory offers advantages that realize a
25 versatile, easily applied solution: the largest capacity yet achieved in this product category
26 will bring new capabilities to mobile consumer products; integration of a dedicated
27 controller reduces product development burdens on product manufacturers; and full
28 compliance with the MultiMediaCard Association (MMCA) Ver. 4.2 high speed memory

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**CLASS ACTION COMPLAINT**                16

1  standard for memory cards, which supports standard interfacing, a maximum data transfer
2  rate of 52MB/sec. and simplified embedding in products.

3      54.    Toshiba will launch a series of embedded NAND Flash Memories based on
4  the new technology, ranging from 1 GB to 16GB in capacity. This wide line-up of
5  eMMC(TM) compliant memories will enable application of these devices in a wide range
6  of products. There is a growing demand for memories with a controller function that
7  minimize development requirements and ease integration into system designs. Toshiba
8  has responded with products such as the LBA-NAND(TM) memory, which incorporates
9  basic control functions for NAND applications, and GB-NAND(TM), a large capacity
10  chip with an SD interface.

11  **E.**    **Defendants Access To Exchange Pricing**

12      55.    Numerous industry trade organizations facilitate Defendant Flash Memory
13  cartel activities. All of the Defendants are members of the Joint Electron Device
14  Engineering Council ("JEDEC") Solid State Technology Association, a standard-setting
15  organization which over the years has held dozens of general membership meetings and
16  regional meetings across the world. In addition, Hynix and Micron are among the
17  founding members of the Open NAND Flash Interface group, the purpose of which is to
18  meet and discuss standards and production of NAND Flash Memory products. Among
19  the other members of the ONFI group are Micron, Hitachi & Winbond.

20      a.    Defendants had ample opportunities to meet over the years at various
21      electronics conventions and other industry activities and expos
22      across the world to conduct cartel activities. For example, Hitachi,
23      Lexar (now part of Micron), Mitsubishi, Renesas, Samsung, Toshiba
24      and Winbond, or their affiliates, are members of the CompactFlash
25      Association which was founded in 1995 as "a non-profit, mutual-
26      benefit" association to promote various forms of flash memory. Over
27      the years, CompactFlash members have met in Japan, Germany, the
28      United Kingdom and the United States.

⊕
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**CLASS ACTION COMPLAINT**    17

b.   Members first got together in New Orleans in February 1997 to meet and give demonstrations of their products at PMA 97. PMA stands for Photo Marketing Association, which annually conducts an international photo industry expo. On March 10-11, 1997, CompactFlash held its first general meeting, with product demonstrations and press briefings, in London.

c.   Other CompactFlash meetings and presentations were held:

* January 8, 1998, Consumer Electronics Show in Las Vegas.
* February 10, 1998, PMA 98 in New Orleans.
* September 16, 1998, Photokina 98 in Cologne, Germany.
* September 30, 1998, World PC Expo in Tokyo.
* January 7, 1999, International Consumer Electronics Show 1999 in Las Vegas.
* February 18, 1999, PMA 1999 in Las Vegas.
* September 7, 1999, World PC Expo 99 in Tokyo.
* December 27, 1999, Consumer Electronics Show 2000 in Las Vegas.
* September 20, 2000, Photokina 2000 in Koln, Germany.
* October 17, 2000, World PC Expo 2000 in Tokyo. At this event Compact Flash also conducted "a free Host Developer Seminary" at Tokyo Fashion Town, according to a news release. "Presentations will be in Japanese and handouts will also be in Japanese," the release said.
* January 6, 2001, Consumer Electronics Show 2001 in Las Vegas.
* February 11, 2001, PMA 2001 in Orlando, Florida.
* January 8, 2002, International Consumers Electronics Show 2002 in Las Vegas.

1          •     September 25, 2002, Photokina 2002 in Koln Germany.

2          •     October 16, 2002, World PC Expo in Tokyo.

3          •     September 17, 2003, World PC Expo in Tokyo.

- January 5, 2006, International Consumers Electronics Show 2006 in Las Vegas. The CompactFlash Association and 60 of its members met at the show to celebrate the 10th anniversary of the founding of the association and presented exhibits, according to a news release.

56. The September 7, 1999 World PC Expo '99 in Tokyo was of special significance with indications it was the site of the birth of cartel-like activities. The CompactFlash Association had 50 members exhibiting at the Expo, a record number for an international show. In addition to special meetings, dinners and other activities at the Expo (which attracted 350,000 corporate employees and IT professionals) that could translate into cartel actions, the sponsor of the Expo said in a news release: "Networking opportunities will also be promoted for overseas exhibiting companies by holding an International Business Partnership Party where company representatives can meet with Japanese buyers and an International Business Seminar that will examine IT industry/market trends in China, India and Taiwan." The release also said: "WORLD PC EXPO has gained a reputation as a gateway to the world's second largest market in IT and as a place where the alliances and OEM partners from the information home appliance age assembly for Asia's largest IT showcase...Most overseas exhibiting companies see the EXPO as a chance to meet potential business partners in Asian markets, including the vast emerging market in China."

57. The structure of the market allowed Defendants to maintain and enforce their cartel using methods such as price signaling. On March 20, 2006, Hynix warned investors that the prices of NAND Flash Memory could fall as much as 50% for the year. The next day, Samsung publicly announced that prices would recover and stabilize. As of August 2006, Flash Memory prices had stabilized, in part, as a result of reduced inventory

1 from manufacturers. "Apple to spur NAND Flash Market, firm says," <u>Electronic News,</u>
2 August 9, 2006.

3     58.     One commentator noted the pervasiveness of cartel activity among the
4 Defendants and others within the overall semiconductor industry - "If the DOJ wanted to,
5 it could just go down every line in the semiconductor industry and find the same issue,'
6 said Gartner, Inc. analyst Richard Gordon. 'That's because there are a relatively few
7 number of suppliers in the chip industry and an open flow of communication between
8 competitors and customers, who may not define price fixing the same way the DOJ does,'
9 he said."

10 (http://blog.tmcnet.com/regulations/enforcement/doj-subpoenas-go-to-amd-nvidia-antitru
11 st-violations-eyed.asp)

12     **F.**     **Information Exchange On The Internet**

13     59.     Certain websites, such as DRAMeXchange (found at
14 http://www.dramexchange.com), allow Defendants to track each other's Flash Memory
15 prices as well.

16     **G.**     **Pricing Trend In Flash Memory Industry**

17     60.     As a result of Defendants' cartel like activity, prices for Flash Memory have
18 been maintained at supra-competitive levels from at least 1999 through October 2005.
19 Prior to 1999, the average selling price for all Flash Memory was at a decline. Beginning
20 in 2000, and continuing through the first quarter of 2001, the aggregate average price of
21 Flash Memory stabilized, then increased.

22     61.     While Flash Memory prices began to somewhat decline at the end of 2001,
23 the cartel created by Defendants operated to palliate those declines so that prices were
24 still at supra-competitive levels. Defendants' collusive activity still continues and has had
25 the effect of keeping prices at supra-competitive levels.

26     62.     The trend in the average prices of Flash Memory is similar to a
27 contemporaneous price movement in the DRAM market. The pricing of, and behavior of,
28 participants in the DRAM market during this period is currently the subject of a price-

1  fixing investigation by the Antitrust Division of the U.S. Department of Justice. Several
2  of the Defendants named herein are either currently the subject of the DRAM
3  investigation, or have pleaded guilty to price-fixing charges with respect to DRAM.
4  Samsung, for example, was fined $300 million by the United States in October 2005 for
5  participating in DRAM price-fixing. Samsung is also under investigation by the DOJ
6  (along with some of the other Defendants) for fixing the prices of SRAM. The agents
7  and employees of Samsung, Hynix, and Micron implicated in the DRAM price-fixing
8  conspiracy are the same agents and employees that are responsible for pricing SRAM and
9  Flash Memory. Samsung and Hynix have pled guilty to price-fixing in the DRAM market
10  during the period from 1999 to 2002 and have paid substantial fines for those unlawful
11  activities. Samsung has paid $300 million while Hynix has paid $185 million. Micron
12  was the amnesty applicant in the DRAM price-fixing investigation.

13  **H.   DOJ Investigation**

14  63.   In October 2006, the DOJ sent subpoenas to approximately 23 companies,
15  including Samsung, Toshiba, Hynix, Renesas, and Micron, in connection with an
16  investigation of cartel activity in the SRAM industry. A DOJ spokesperson was quoted as
17  saying: "[t]he U.S. Department of Justice's antitrust division is conducting an
18  investigation regarding anti-competitive practices against chief SRAM manufacturers."
19  DOJ's SRAM investigation concerns anti-competitive conduct that was continuing at least
20  as recently as 2005.

21  64.   In March 2007, Toshiba and Hynix declared a truce by agreeing to a cross-
22  licensing deal on NAND Flash Memory chips, ending a bitter two-and-a-half year legal
23  tussle over patents. "We made the cross-licensing agreement due to mutual needs," said
24  James Kim, vice-president of investor relations at Hynix. Hynix and Toshiba also signed
25  patent cross-licensing and product supply agreements covering semiconductor
26  technology. Under the terms of the deal, Hynix pays Toshiba a cross-licensing fee and
27  Toshiba is able to buy chips from Hynix. The agreement settled all pending patent-
28  related litigation between the companies in the US and Japan.

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**CLASS ACTION COMPLAINT**                    21

1    65.    Defendants, which includes their officers, directors, and employees,

2 participated in anti-competitive behavior and unfair business practices which effectuated

3 harm on businesses and consumers and violated standards of ethical behavior through the

4 following conduct:

5               a.    participating in meetings and conversations, including through

6                     various trade associations and committees, to discuss the prices of

7                     Flash Memory in the United States;

8               b.    agreeing, during those meetings and conversations, to charge prices

9                     at specified levels and otherwise to increase and maintain prices of

10                    Flash Memory sold in the United States;

11              c.    issuing price announcements and quotations in accordance with the

12                    agreements reached; and selling Flash Memory to various customers

13                    in the United States at non-competitive prices.

14   66.    Defendants' contract, combination, trust or conspiracy was centered in,

15 carried out, effectuated and perfected mainly in the State of California. Statements

16 concerning the prices and market conditions for Flash Memory were disseminated by

17 Defendants from and into California on a regular and continuous basis. Therefore, all

18 members of Class, whether or not California residents, are entitled to recover under

19 California law, as well as the laws of their own states.

20   **VIII. ACTIVE CONCEALMENT OF CONSPIRACY**

21   67.    Throughout and beyond the conspiracy, Defendants and their co-

22 conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff.

23 Defendants and their co-conspirators conducted their conspiracy in secret and kept it

24 mostly within the confines of their higher-level executives. Defendants and their co-

25 conspirators publicly provided pre-textual and false justifications regarding their price

26 increases. Defendants and their co-conspirators conducted their conspiracy in secret,

27 concealed the true nature of their unlawful conduct and acts in furtherance thereof, and

28 actively concealed their activities through various other means and methods to avoid

❽
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**CLASS ACTION COMPLAINT**          22

1  detection. Plaintiff did not discover, and could not have discovered through the exercise
2  of reasonable diligence, that Defendants and their co-conspirators were violating the
3  antitrust laws as alleged herein until shortly before class action litigation was commenced.

4  68.  As a result of the active concealment of the conspiracy by Defendants and
5  their co-conspirators, any and all applicable statues of limitations otherwise applicable to
6  the allegations herein have been tolled.

7  ## IX. VIOLATIONS ALLEGED

8  ### First Claim

9  ### (Violation of Section 1 of the Sherman Act)

10  69.  Plaintiff incorporates and realleges, as though fully set forth herein, each
11  and every allegation set forth above.

12  70.  Although the precise dates are not known to Plaintiff – but are known to
13  defendant – Plaintiff alleges upon information and belief that from as early as January 1,
14  1999, and continuing through at least through October of 2005, Defendants and their co-
15  conspirators entered into agreements, understandings, and a conspiracy in restraint of
16  trade to artificially raise, fix, maintain, and/or stabilize prices for Flash Memory in the
17  United States. These agreements, understandings, and the conspiracy violated Section 1
18  of the Sherman Act, 15 U.S.C. §1.

19  71.  Defendants' and their co-conspirators activities as alleged herein were
20  within the flow of, were intended to, and did have a substantial effect on the foreign and
21  interstate commerce of the United States.

22  72.  In entering into and conducting the conspiracy as agreed, Defendants and
23  their co-conspirators committed the acts they agreed to commit, including those
24  specifically set forth herein and additional acts and conduct in furtherance of the
25  conspiracy, with the specific goals and intent:

26        a.  of fixing, raising, and maintaining the price of Flash Memory;

27        b.  of allocating amongst themselves markets for Flash Memory;

28

❸
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

CLASS ACTION COMPLAINT  23

1             c.    of submitting rigged bids in order to secure and carry out certain

2                  Flash Memory contracts; and

3             d.    of allocating amongst themselves the production of Flash Memory.

4      73.    Among the effects of Defendants' and their co-conspirators acts have been:

5             a.    Restraint, suppression, and/or elimination of price competition in the

6                  sale of Flash Memory in the Untied States;

7             b.    The raising, fixing, maintenance, and stabilization of prices at

8                  artificially high and non-competitive levels for Flash Memory sold

9                  by Defendants and their co-conspirators in the United States; and

10           c.    The denial to consumers of Flash Memory products of the benefits of

11                 competition.

12      74.    Plaintiff and the members of the Class have been injured and will continue

13 to be injured in their business and property by paying more for Flash Memory purchased

14 indirectly from Defendants and their co-conspirators than they would have paid and will

15 pay in the absence of the combination and conspiracy, including paying more for personal

16 computers, mobile phones and other products in which Flash Memory is a component as a

17 result of higher prices paid for Flash Memory by the manufacturers of those products.

18      75.    Plaintiff and the Class are entitled to an injunction against Defendants,

19 preventing and restraining the violations alleged herein.

20                         **Second Claim**

21              **(Violation of the California Cartwright Act)**

22      76.    Plaintiff realleges the paragraphs set forth above and incorporates them

23 herein as if fully alleged..

24      77.    Defendants' acts in violation of federal and state antitrust laws and other

25 laws as alleged herein were carried out, centered in, effectuated from and perfected

26 largely within the State of California. Defendants' conduct within California injured all

27 members of the Class throughout the United States. As a result, this claim for relief under

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1 California law is brought on behalf of all members of the Class, regardless of their
2 residence and/or domicile.

3     78.     From at least as early as January 1, 1999, and continuing until
4 approximately October of 2005, Defendants and their co-conspirators entered into and
5 engaged in a continuing conspiracy in violation of Section 16720 of the California
6 Business and Professional Code. Defendants and their co-conspirators acted in violation
7 of Section 16720 to fix, raise, stabilize and maintain prices of, and allocate markets for,
8 Flash Memory at prices in excess of what they would have been absent Defendants' and
9 their co-conspirators' conduct as alleged herein.

10     79.     The violations of Section 16720 of the California Business and Professions
11 Code as alleged herein comprised a continuing unlawful trust and concert of action
12 between and among the Defendants and their co-conspirators. The substantial terms of
13 this unlawful trust were to fix, raise, maintain and stabilize the prices of, and to allocate
14 markets for, Flash Memory.

15     80.     In carrying out this illicit trust and conspiracy, Defendants and their co-
16 conspirators:

17           a.     fixed, raised, maintained, and stabilized the price of Flash Memory;

18           b.     allocated markets for Flash Memory among themselves;

19           c.     submitted rigged bids for the award and performance of certain Flash
20                Memory contracts; and

21           d.     allocated amongst themselves the production of Flash memory.

22     81.     Defendants' and their co-conspirators' actions caused:

23           a.     a restraint of price competition in the sale of Flash Memory in the
24                State of California and throughout the United States;

25           b.     The fixing of artificially high, non-competitive prices for Flash
26                Memory sold by Defendants and their co-conspirators in the State of
27                California and throughout the United States; and

28

c.     Plaintiff and the class to be deprived of the benefit of free and open competition in the pricing of Flash Memory.

82.     Plaintiff and the other members of the Class paid higher prices for Flash Memory than they would have paid in the absence of Defendants' and their co-conspirators' acts.

83.     Plaintiff and the members of the Class have been injured in their business and property as a direct and proximate result of Defendants' unlawful conduct because they paid more for products containing Flash Memory than they otherwise would have paid but for Defendants' unlawful conduct. Plaintiff and the class seek treble damages and the costs of the suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and Professions Code, as a result of Defendants' and their co-conspirators' violations of Section 16720 of the California Business and Professions Code, .

## Third Claim

## (Violation of the California Unfair Competition Law)

84.     Plaintiff realleges the allegations set forth above and incorporates them herein as if fully set forth.

85.     Defendants' acts in violation of federal and state antitrust laws and other laws as alleged herein were carried out, centered in, effectuated from and perfected largely within the State of California. Defendants' conduct within California injured all members of the Class throughout the United States. As a result, this claim for relief under California law is brought on behalf of all members of the Class, regardless of their residence and/or domicile.

86.     Beginning no later than January 1, 1999, and continuing thereafter at least up to and including October 2005, Defendants and their co-conspirators violated Section 17200 by engaging in acts of unfair competition as alleged herein.

87.     This Claim is asserted pursuant to Sections 17203 and 17204 of the California Business and Professions Code. Plaintiffs and the class seek restitution from

1 Defendants for the acts alleged herein which violate Section 17200 of the California

2 Business and Professions Code.

3      88.     The acts of Defendants and their co-conspirators as set forth herein are

4 unfair, unlawful and/or fraudulent business acts or practices within the meaning of

5 California Business and Professions Code, Section 17200 and include, but are not limited

6 to, the following:

7                a.      Violations of Section 1 of the Sherman Act;

8                b.      Violations of Section 16720, *et seq.*, of the California Business and

9                     Professions Code;

10                c.      Other acts by Defendants and their co-conspirators as alleged herein

11                     which are otherwise unfair, unconscionable, unlawful or fraudulent

12                     within the meaning of Section 17200, California Business and

13                     Professions Code; and

14      89.     Plaintiff and each of the Class members are entitled to full restitution and/or

15 disgorgement of all revenues, earnings, profits, compensation and benefits which

16 Defendants may have obtained as a result of such business acts or practices.

17      90.     Defendants' and their co-conspirators' unlawful and unfair business

18 practices are believed to be continuing and there is no reason to believe that Defendants

19 will not cease such conduct.

20      91.     The acts of Defendants and their co-conspirators as alleged herein have

21 caused and continue to cause Plaintiff and the members of the Class to pay higher prices

22 for products containing Flash Memory than they would have paid but for these acts.

23 Plaintiff and the members of the Class suffered injury in fact and lost money or property

24 as a result of such unfair competition. This conduct violates §17200 of the California

25 Business and Professions Code.

26      92.     Defendants and their co-conspirators have been unjustly enriched, and

27 Plaintiff and the class are entitled to relief including restitution and/or disgorgement of all

28 revenues, earnings, profits, compensation and benefits which may have been obtained by

⊛
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**CLASS ACTION COMPLAINT**         27

1 | Defendants as a result of such business practices, pursuant to the California Business and
2 | Professions Code, Sections 17203 and 17204.

3 | <center>**Fourth Claim**</center>

4 | <center>**(Violation of State Antitrust and Unfair Competition Law)**</center>

5 | 93.      Plaintiff incorporates and realleges, as though fully set forth herein, each
6 | and every allegation set forth in the preceding paragraphs of this Complaint.

7 | 94.      By reason of the foregoing, Defendants have entered into agreements in
8 | restraint of the trade in violation of

9 |     a.    Alabama Code §§ 8-10-1 et seq.

10 |     b.    Arizona Revised Stat. §§ 44-1401 et seq.

11 |     c.    District of Columbia Code Ann. §§ 28-4503 et seq.

12 |     d.    Iowa Code §§ 553.1 et seq.

13 |     e.    Kansas Stat. Ann. §§ 50-101 et seq.

14 |     f.    Maine Rev. Stat. Ann. 10, §§ 1101 et seq.

15 |     g.    Michigan Com. Laws. Ann. §§ 445.773 et seq.

16 |     h.    Minnesota Stat. §§ 325D.52 et seq.

17 |     i.    Mississippi Code Ann. §§ 75-21-1 et seq.

18 |     j.    Nebraska Rev. Stat. §§ 59-801 et seq.

19 |     k.    Nevada Rev. Stat. Ann. §§ 598A et seq.

20 |     l.    New Mexico Stat. Ann. §§ 57-1-1 et seq.

21 |     m.    North Carolina Gen. Stat. §§ 75-1 et seq.

22 |     n.    North Dakota Cent. Code §§ 51-08.1-01 et seq.

23 |     o.    Pennsylvania common law.

24 |     p.    South Dakota Codified Laws Ann. §§ 37-1 et seq.

25 |     q.    Tennessee Code Ann. §§ 47-2-101 et seq.

26 |     r.    Vermont Stat. Ann. 9 §§ 2453 et seq.

27 |     s.    West Virginia §§ 47-18-1 et seq. and

28 |     t.    Wisconsin Stat. §§ 133.01 et seq.

95. Class Members in each state listed above paid supra-competitive, artificially inflated prices for Flash Memory. As a direct and proximate result of Defendants' unlawful conduct, such members of the Class have been injured in their business and property in that they paid more for Flash Memory products than they otherwise would have paid in the absence of the Defendants' unlawful conduct.

## Fifth Claim

### (Violation of State Consumer Protection and Unfair Competition Laws)

96. Plaintiff incorporates and realleges, as thought fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

97. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statues listed below.

98. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of

  a. Alaska Stat. §§ 45.50.471 et seq.

  b. District of Columbia Code §§ 28-3901 et seq.

  c. Florida Stat. §§ 501.201 et seq.

  d. Hawaii Rev. Stat. §§ 480 et seq.

  e. Idaho Code §§ 48-601 et seq.

  f. Kansas Stat. §§ 50-623 et seq.

  g. Louisiana Rev. Stat. §§ 51:1402 et seq.

  h. 5 Maine Rev. Stat. §§ 207 et seq.

  i. Montana Code §§ 30-14-101 et seq.

  j. Nebraska Rev. Stat. §§ 59-1601 et seq.

  k. New Mexico §§ 57-12-1 et seq.

  l. New York Gen. Bus. Law §§ 349 et seq.

  m. North Carolina Gen. Stat. §§ 75-1.1 et seq.

  o. Oregon Rev. Stat. §§ 646.605 et seq.

     p.     Rhode Island Gen. Laws. §§ 6-13.1-1 et seq.

     q.     South Carolina Code Laws §§ 39-5-10 et seq.

     r.     Utah Code §§ 13-11-1 et seq.

     s.     9 Vermont §§ 2451 et seq.

     t.     West Virginia Code §§ 46A-6-101 et seq.

     u.     Wyoming Stat. §§ 40-12-105 et seq.

99.     Class Members in the states listed above paid supra-competitive, artificially inflated prices for Flash Memory products. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the members of the Class have been injured in their business and property in that they paid more for Flash Memory products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

<div align="center">

**Sixth Claim**

**(Unjust Enrichment and Disgorgement of Profits)**

</div>

100.     Plaintiff realleges the allegations set forth above as if fully set forth herein.

101.     As a result of the conduct alleged herein, defendants and their co-conspirators have been unjustly enriched through overpayments by Plaintiff and the other Class Members and the resulting profits.

102.     Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiff and the other Class Members.

103.     Plaintiff seeks disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

**X.    PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays:

A.     That the Court determine that class treatment pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) is appropriate for the claims alleged herein under the Sherman Act, the California Cartwright Act, the California Unfair Competition Law, the state antitrust and unfair competition laws, and the common law;

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1    B.     That the Defendants, their affiliates, successors, transferees, assignees, and

2    the officers, directors, partners, agents, and employees thereof, and all other persons

3    acting or claiming to act on their behalf, be permanently enjoined and restrained from in

4    any manner continuing, maintaining, or renewing the conduct, contract, trust,

5    understanding, conspiracy, or combination alleged herein, or from entering into any other

6    conduct, contract, trust, understanding, conspiracy, or combination having a similar

7    purpose or effect, and from adopting or following any practice, plan, program, or device

8    having a similar purpose or effect;

9    C.     That the unlawful conduct, contract, conspiracy or combination alleged

10   herein be adjudged and decreed to be:

11                  i.      a restraint of trade or commerce in violation of section 1 of the

12                          Sherman Act;

13                  ii.     a violation of the California Cartwright Act;

14                  iii.    a violation of the California Unfair Competition Law;

15                  iv.     violations of the state antitrust and unfair competition laws; and

16                  v.      acts of unjust enrichment.

17   D.     That Plaintiff and the Class recover damages, as available under the law,

18   and that a judgment be entered in favor of Plaintiff and the Class jointly and severally

19   against Defendants in an amount to be trebled in accordance with applicable laws;

20   E.     That Plaintiff and members of the Class be awarded restitution, including

21   disgorgement of profits obtained by Defendants as a result of their acts of unfair

22   competition and acts of unjust enrichment;

23   F.     That Plaintiff and members of the Class be awarded pre- and post-

24   judgment interest from and after the date of service of the initial complaint in this action;

25   G.     That Plaintiff and members of the Class recover their costs of this suit,

26   including reasonable attorneys' fees as provided by law; and

27   ///

28   ///

**CLASS ACTION COMPLAINT**                    31

1    H.    That Plaintiff and members of the Class receive such other and further relief

2  as the nature of the case may require or as the Court deems just, equitable, and proper.

3
4  Dated: July 23, 2007                          **COTCHETT, PITRE & McCARTHY**

5                                        By:    _____
6                                               STEVEN N. WILLIAMS
                                                Attorneys for Plaintiffs
7
8
9  **XI.    DEMAND FOR JURY TRIAL**

10         Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

11  a trial by jury for all issues so triable.

12  Dated: July 23, 2007                          **COTCHETT, PITRE & McCARTHY**

13
14                                        By:    _____
                                                STEVEN N. WILLIAMS
15                                              Attorneys for Plaintiffs
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**CLASS ACTION COMPLAINT**                    32